# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

YOLANDA GEVARZES,

        Plaintiff,

vs.                                                     Case No. 6:12-cv-1126-Orl-37DAB

CITY OF PORT ORANGE; PHILLIP S.
SLEASE; KIMBERLY A. VINGARA; and
BRIAN A. RIZZO,

        Defendants.

---

## ORDER

This cause is before the Court on the following:

1.  Plaintiff's Complaint (Doc. 1), filed July 19, 2012;

2.  Defendant City of Port Orange, Florida's Motion to Dismiss (Doc. 18), filed August 20, 2012;

3.  Motion of Defendants, Phillip S. Slease and Kimberly A. Vingara, to Dismiss Plaintiff's Complaint, and Incorporated Memorandum of Law (Doc. 20), filed August 21, 2012;

4.  Plaintiff's Response to Motions to Dismiss (Doc. 25), filed August 27, 2012;

5.  Motion of Defendant, Brian A. Rizzo, to Dismiss Plaintiff's Complaint, and Incorporated Memorandum of Law (Doc. 32), filed October 9, 2012; and

6.  Plaintiff's Response to Motion to Dismiss (Doc. 36), filed October 24, 2012.

Upon consideration, the Court hereby grants in part and denies in part the motions.

## BACKGROUND[1]

Plaintiff is deaf and communicates using American Sign Language (ASL). (Doc. 1, ¶¶ 12, 15.) Defendants are the City of Port Orange and three Port Orange police officers, Phillip Slease, Kimberly Vingara, and Brian Rizzo. (*Id.* ¶¶ 6, 8, 10.)

This dispute arose when Plaintiff went to dinner with her boyfriend Lawrence Behrans and his friend Jason McConnell. (*Id.* ¶ 16.) McConnell does not communicate through ASL. (*Id.* ¶ 17.) After dinner, Plaintiff and McConnell began to argue—through physical gestures—in the restaurant parking lot. (*Id.*) Plaintiff claims that Behrans, apparently attempting to intervene in the argument, restrained her by wrapping his arm around her and pressing her face into his chest. (*Id.* ¶ 18.) She alleges that she then bit Behrans in self-defense, after which he released her. (*Id.* ¶¶ 20, 30.)

At this point, restaurant employees called the police. (*Id.* ¶ 21.) Officers Slease, Vingara, and Rizzo arrived on the scene. (*Id.* ¶ 23.) The officers spoke verbally to Behrans and McConnell. (*Id.* ¶ 24.) Officer Slease attempted to communicate with Plaintiff by using Behrans as an interpreter. (*Id.* ¶ 26.) After that failed, he attempted to communicate to Plaintiff in writing. (*Id.* ¶ 27.) This attempt also apparently failed.[2]

Plaintiff requested an ASL interpreter.[3] (*Id.*) Plaintiff avers that the officers refused to obtain an interpreter. (*Id.* ¶ 28.) Subsequently, Plaintiff was arrested and

---

[1] The following factual allegations, drawn from the Complaint, are accepted as true for the purpose of considering the instant motions and are construed in the light most favorable to Plaintiff. *See Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006).

[2] Plaintiff states, "When Defendant SLEASE could not use Mr. Behrans [to interpret], he felt an interview was necessary and chose to attempt to conduct an interview through writing despite GEVARZES [sic] many requests for a sign language interpreter." (Doc. 1, ¶ 27.) It is unclear whether Plaintiff is able to communicate via written English.

[3] The Complaint does not state whether Plaintiff requested an interpreter in writing or whether Plaintiff communicated this request through Behrans.

imprisoned for three days. (*Id.* ¶ 33.)

Plaintiff's Complaint brings four claims: (1) a Rehabilitation Act claim against the City; (2) an Americans with Disabilities Act (ADA) claim against the City; (3) a 42 U.S.C. § 1983 claim against the City for improper customs and policies regarding interpreters and failure to train and supervise the officers; and (4) a § 1983 claim against the officers in their official capacities for false arrest and false imprisonment. (*Id.* ¶¶ 45–77.)

The City moved to dismiss Counts I, II, and III against it. (Doc. 18.) The officers also moved to dismiss Count IV against them. (Docs. 20, 32.) Plaintiff opposed. (Docs. 25, 36.) This matter is now ripe for the Court's adjudication.

## STANDARDS

Federal Rule of Civil Procedure 8(a)(2) provides that a claimant must plead "a short and plain statement of the claim." On a motion to dismiss, the Court limits its consideration to "the well-pleaded factual allegations." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this plausibility determination, the Court must accept the factual allegations as true; however, this "tenet . . . is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers mere "labels and conclusions" is therefore insufficient. *Twombly*, 550 U.S. at 555.

## DISCUSSION

### I.   Rehabilitation Act & ADA Claims (Counts I & II)

"Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (citing 29 U.S.C. § 794(d)). Therefore, the Court will address the ADA and Rehabilitation

Act claims together.

Police conduct during the arrest of a disabled person is subject to the strictures of the ADA. *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1084–85 (11th Cir. 2007) (citing 42 U.S.C. § 12132). To state an ADA claim, Plaintiff must demonstrate that: (1) she is a qualified individual with a disability; (2) she was either "excluded from participation in or denied the benefits of a public entity's services, programs, or activities" or "otherwise discriminated against by a public entity"; and (3) the discrimination was on the basis of her disability. *Id.* at 1083. Plaintiff, a deaf individual, has satisfactorily pled the first element; therefore, the Court will focus on whether the officers' failure to provide an ASL interpreter before arresting Plaintiff states a claim of discrimination.

The ADA's implementing regulations state that public entities shall provide auxiliary aids, including interpreters, where necessary to afford disabled persons equal opportunity. 28 C.F.R. § 35.160(b)(1); 42 U.S.C. § 12103(1)(A). The type of auxiliary aid required depends on the request of the individual (the "primary consideration"), the method of communication used by the individual, and the nature, length, complexity, and context of the communication. 28 C.F.R. § 35.160(b)(2). "A public entity shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication except . . . [i]n an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available." *Id.* § 35.160(c)(2)(i).

Importantly, however, the ADA "does not require a public entity to employ any and all means to make [interpreters] accessible to persons with disabilities, but only to make 'reasonable modifications' [to policies, practices, or procedures] that would not

fundamentally alter the nature of the service or activity of the public entity or impose an undue burden." *Bircoll*, 480 F.3d at 1082 (citing *Tennessee v. Lane*, 541 U.S. 509, 531–32 (2004)). Thus, "the question is whether, given criminal activity and safety concerns, any modification of police procedures is reasonable before the police physically arrest a criminal suspect, secure the scene, and ensure that there is no threat to the public or officer's safety." *Id.* at 1085.

Reasonable modification is a "highly fact-specific inquiry." *Id.* at 1085–86 (citing *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1527 (11th Cir. 1997)). "What is reasonable must be decided case-by-case based on numerous factors." *Id.* at 1086. Some of those factors include: whether exigent circumstances[4] are present, such as if time is of the essence in the situation or if there is a danger to the public; the ability of the individual to communicate via other means, such as in writing, and whether the individual is asked to give a written statement; the length, complexity, and context of the communication; and the preferred method of communication of the individual and whether an effective alternative method exists. *Id.* at 1086–87.

Plaintiff's Complaint is factually sparse. Notably, it does not allege whether Plaintiff reads and writes English in addition to her ASL fluency,[5] nor does it indicate

---

[4] While *Bircoll* involved a DUI, other courts have found exigencies to be present in a number of different circumstances, such as a traffic stop for running a red light. *See Bahl v. Cnty. of Ramsey*, 695 F.3d 778, 784 (8th Cir. 2012) (in a case involving a deaf individual who ran a red light, finding that "under the exigencies of the traffic stop, [the officer] was not required to honor [the plaintiff's] request to communicate by writing"); *see also Waller ex rel. Estate of Hunt v. Danville, Va.*, 556 F.3d 171, 175 (4th Cir. 2009) ("'[E]xigency' is not confined to split-second circumstances. Although the officers did not face an immediate crisis, the situation was nonetheless unstable . . . ." (citation omitted)).

[5] The Court notes that a disabled individual's ability to communicate via writing—despite preferring an interpreter—is highly relevant. *See, e.g.*, *Bircoll*, 480 F.3d at 1088 ("[Plaintiff's] own failure to read what [the police officer] provided him does not constitute

how long the communication in the parking lot took place, nor whether there were

exigent circumstances present during that communication.[6] Construing the facts alleged

in the light most favorable to Plaintiff, the Court concludes that Plaintiff has adequately

pled the discrimination element. Whether it was actually reasonable[7] to expect the

police to bring an interpreter to the scene, however, remains to be determined on the

discrimination."); *see also Patrice v. Murphy*, 43 F. Supp. 2d 1156, 1161 (W.D. Wash. 1999) ("In our case, where plaintiff reads and writes well, accommodation via the use of the written word is, as a matter of law, sufficient."). Plaintiff's Complaint alleges that the officer did attempt to communicate via writing (Doc. 1, ¶ 27); however, it is unclear whether Plaintiff was able to respond via writing and refused to do so. *See supra* note 2.

[6] Plaintiff, who bit her boyfriend, was arrested for domestic battery. (*See* Doc. 1, ¶ 36.) Other courts have found that a domestic violence situation constitutes an exigent circumstance demonstrating a lack of time to provide an on-scene interpreter. *See, e.g.*, *Tucker v. Tennessee*, 539 F.3d 526, 535–36 (6th Cir. 2008); *Patrice*, 43 F. Supp. 2d at 1160. On the basis of the current record and construing the facts in the light most favorable to Plaintiff, the Court cannot yet determine whether this particular situation presented exigent circumstances such that there was not enough time to furnish an interpreter.

[7] There are two broad categories of ADA arrest cases: (1) wrongful-arrest cases, in which "police wrongly arrested someone with a disability because they misperceived the effects of that disability as criminal activity"; and (2) reasonable-accommodation cases, in which "police properly investigated and arrested a person with a disability for a crime unrelated to that disability, [but] they failed to reasonably accommodate the person's disability in the course of investigation or arrest." *Gohier v. Enright*, 186 F.3d 1216, 1220 (10th Cir. 1999). To the extent that Plaintiff articulates a wrongful-arrest theory—she was wrongfully arrested because of lawful conduct attributable to Plaintiff's deafness that the officers misperceived as unlawful activity—the Court finds that Plaintiff cannot make out such a claim because she admits that she actually bit Behrans (whether or not it was in self-defense). *Compare Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000) (in a case where a mentally ill individual came at police with a knife, finding that the plaintiff had not made out an ADA claim based on wrongful-arrest theory because his conduct was actually unlawful activity), *with Lewis v. Truitt*, 960 F. Supp. 175, 176 (S.D. Ind. 1997) (finding a genuine issue of fact on the plaintiff's wrongful-arrest theory and denying police officers' motion for summary judgment where a deaf individual was forcibly arrested for not following the officers' verbal instructions, even though they were informed he was deaf and did not believe it). Plaintiff was not arrested for disorderly conduct, resisting arrest, or any similar crime that would be based solely on her signing and inability to modulate her voice. (Doc. 25, p. 3.) Instead, Plaintiff was arrested for domestic battery because she—admittedly—bit her boyfriend. (*Id.*) Therefore, Plaintiff has not stated a wrongful-arrest claim, and only the reasonable-accommodation theory shall proceed.

basis of a fuller factual record. *See, e.g.*, *id.* at 1081 (reviewing the reasonable-accommodation inquiry at the summary judgment stage).

## II.  § 1983 Claim Against Officers (Count IV)

The Defendant police officers are sued in their official capacities only. (Doc. 1, ¶¶ 7, 9, 11.) The § 1983 claim against the officers alleges that they violated Plaintiff's Fourth and Fourteenth Amendment rights. (*Id.* ¶ 73.) The § 1983 claim against the City is premised on the same underlying constitutional violations. (*Id.* ¶ 64.)

"[S]uits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent . . . . To keep both the City and the officers sued in their official capacity as defendants . . . [is] redundant." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (citations omitted); *see also Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978) (noting that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law." (citation and internal quotation marks omitted)).

Plaintiff's claims against the City and the officers in their official capacities are therefore the same. Accordingly, Plaintiff's § 1983 claim against the officers is due to be dismissed as duplicative.

## III.  § 1983 Claim Against the City (Count III)

To state a cause of action under § 1983, a plaintiff must allege that the defendant, acting under color of state law, deprived the plaintiff of her federally protected rights. *Motes v. Myers*, 810 F.2d 1055, 1058 (11th Cir. 1987). Furthermore, a

municipality may be held liable under § 1983 only when the deprivation was undertaken pursuant to a policy or custom. *Pembaur v. Cincinnati*, 475 U.S. 469, 478–81 (1985). Plaintiff alleges that: (1) her Fourth Amendment right to be free from unreasonable search and seizure was violated when she was falsely arrested and imprisoned; and (2) her Fourteenth Amendment rights to equal protection and due process of law were violated when she was discriminated against on the basis of her disability. (Doc. 1, ¶ 64.)

### a. Fourth Amendment

A battery is defined as "actually and intentionally touch[ing] or strik[ing] another person against the will of the other" or "intentionally caus[ing] bodily harm to another person." Fla. Stat. § 784.03. Florida law allows for a warrantless arrest if the officer has probable cause to believe that the arrestee has committed a battery or domestic battery. *Id.* § 901.15(7), (9)(a).

"An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest." *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003). Thus, "probable cause constitutes an absolute bar to . . . § 1983 claims alleging false arrest." *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998). Probable cause is also a bar to a false imprisonment claim under § 1983. *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009) ("Because [the officer] had probable cause to arrest him, [the plaintiff's] complaint of false imprisonment fails.").

"For probable cause to exist, . . . an arrest must be objectively reasonable based on the totality of the circumstances." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). That is, "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to

believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990). "Probable cause requires more than mere suspicion, but does not require convincing proof." *Bailey v. Bd. of Cnty. Comm'rs*, 956 F.2d 1112, 1120 (11th Cir. 1992).

In the instant case, Plaintiff bit her boyfriend, which she claims was self-defense. (Doc. 1, ¶¶ 20, 29.) However, "in determining probable cause[,] an arresting officer does not have to consider the validity of any *possible* defense." *Williams v. Sirmons*, 307 F. App'x 354, 358 (11th Cir. 2009) (emphasis added) (noting, however, that the officer must consider knowledge of facts and circumstances which *conclusively* establish an affirmative defense); *see also Sada v. City of Altamonte Springs*, 434 F. App'x 845, 850 (11th Cir. 2011) (noting that "[i]t does not appear, however, that officers are required to consider affirmative defenses in their probable cause calculations"); *Baker v. McCollan*, 443 U.S. 137, 146 (1979) (noting that an officer is not "required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent"). Eyewitness accounts of a battery can negate an arrestee's claimed affirmative defense that he had reason to commit the battery. *See Sada*, 434 F. App'x at 851 (noting that witnesses who saw a father hit his son precluded a conclusive establishment of the father's claimed affirmative defense of parental discipline privilege, and finding that the officers had probable cause to arrest the father for battery). In a domestic disturbance, "[t]he crucial question is not whether [the arrestee's] physical contact with [the apparent victim] was or was not defensive. Rather, the crucial question is what reasonably appeared to an officer under the circumstances." *Wolk v. Seminole Cnty.*, 276 F. App'x 898, 899–900

(11th Cir. 2008) (finding arguable probable cause supporting a qualified immunity defense[8] where an officer arrested a brother for domestic battery when he claimed on the scene that he hit his sister in self-defense and the sister urged the officer not to arrest him); *see also Patrice v. Murphy*, 43 F. Supp. 2d 1156, 1161 (W.D. Wash. 1999) (in a case in which a deaf woman hit her husband to get his attention and was arrested for domestic violence, finding actual probable cause even though she argued that if she had an ASL interpreter on-scene, she would have been able to explain the situation so as not to be arrested).[9]

Here, there is no dispute that Plaintiff bit her boyfriend. (Doc. 1, ¶ 20.) The officers were called to the scene after Plaintiff argued with McConnell and bit Behrans. (*Id.* ¶ 21.) Though Plaintiff alleges, and the Court must accept as true, that she was acting "purely defensive[ly]" (*id.* ¶ 29), the fact remains that she bit someone. The law does not require officers to take the possibility of self-defense into account when they arrive on the scene of a domestic disturbance and it is undisputed that one party bit another. *See Sada*, 434 F. App'x at 850; *see also Williams*, 307 F. App'x at 358. Even if

---

[8] Though a great deal of the Defendant officers' arguments focused on the qualified immunity defense (Doc. 20, pp. 5–9), qualified immunity only applies to officers sued in their individual capacities. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).

[9] Other courts have similarly noted that an arrestee's claimed defense, or the apparent victim's wish not to have the alleged abuser arrested, do not negate the existence of probable cause. *See, e.g.*, *Hanson v. Dane Cnty.*, 599 F. Supp. 2d 1046, 1051–52, 1060 (W.D. Wis. 2009) (finding actual probable cause to arrest a husband for domestic battery where a wife made a 911 hangup call and when the officers arrived, the wife did not want the officers to enter the home and the husband eventually admitted to accidentally "bumping" her during an argument); *Martin v. Russell*, 563 F.3d 683, 685–86 (8th Cir. 2009) (noting that, "[g]iven the inherent volatility of domestic disputes, officers are not required to believe what one party says" about the situation, and finding arguable probable cause where an officer arrested a husband who appeared to be violating a restraining order taken out by his wife, even though both husband and wife claimed that the restraining order had been lifted).

Plaintiff had been able to explain the situation fully on the scene and make her case to the officers for self-defense, probable cause still would have existed to arrest Plaintiff for battery because she does not dispute that she bit Behrans. *See Sada*, 434 F. App'x at 850; *Patrice*, 43 F. Supp. 2d at 1162–63 ("Plaintiff argues that, with the help of an ASL interpreter, she could have talked her way out of the seemingly damning evidence and avoided arrest. . . . [However,] [t]he fact that the officers did not ask any follow-up questions before making their determination does not make their investigation inadequate on the constitutional level where they had already obtained information from plaintiff which, on its face, established and/or confirmed the existence of probable cause."); *see also Brown v. Ridgway*, 845 F. Supp. 2d 1273, 1276, 1278 (M.D. Fla. 2012) (Presnell, J.) (finding that officers had both arguable and actual probable cause to believe that a plaintiff had committed aggravated assault where the plaintiff made a 911 call and admitted to the operator that he had shot someone, "albeit in self-defense").

The "crucial" question is what the officer reasonably believed under the totality of the circumstances. *See Wolk*, 276 F. App'x at 899. When an officer arrives on the scene of a reported domestic dispute wherein the apparent aggressor has been arguing with one person and has bitten another, and none of the parties or witnesses dispute that the violent act occurred (even if they dispute why it occurred), and the officer can see the bite mark on the apparent victim[10] (*see* Doc. 25, p. 9), then a reasonable officer would

---

[10] The Court does not discount Plaintiff's claim that, in fact, it was she that was the victim of domestic battery. (Doc. 1, ¶ 30.) The Court accepts that allegation as true and does not take it lightly. Indeed, the Court is aware of recent trends indicating that women are increasingly being arrested for domestic violence in part because of the difficulty of identifying the primary aggressor in such a situation. *See, e.g.*, David Hirschel et al., *Domestic Violence and Mandatory Arrest Laws: To What Extent Do They Influence Police Arrest Decisions?*, 98 J. CRIM. L. & CRIMINOLOGY 255, 260 (2007). However, the Court also notes that, dispositively, Plaintiff's own allegations demonstrate

deem it prudent to arrest the biter. *See Von Stein*, 904 F.2d at 578; *see also Law v. City of Post Falls*, 772 F. Supp. 2d 1283, 1287, 1291 (D. Idaho 2011) (finding probable cause to arrest a father for battery on his daughter where the officers saw a red mark on the daughter's face and witnesses saw the incident, even though the father claimed it was in self-defense because the daughter was screaming in his face and physically preventing him from leaving).

Therefore, the Court finds that, based on Plaintiff's own allegations, probable cause exists as a matter of law. Accordingly, the part of Plaintiff's § 1983 claim based on underlying Fourth Amendment violations is due to be dismissed. As Plaintiff herself alleges facts which support a finding of probable cause, this dismissal is with prejudice.

### b. Fourteenth Amendment

The Court will now address the remainder of the § 1983 claim, which is premised on underlying Fourteenth Amendment due process and equal protection violations. "A plaintiff can establish § 1983 liability by identifying that she has been deprived of constitutional rights by either an express policy or a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom . . . ." *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 966 (11th Cir. 2002); *see also Pembaur v. Cincinnati*, 475 U.S. 469, 478–81 (1985) (noting that *respondeat superior* is not an appropriate basis for suit). The City has express policies in place that direct officers to obtain interpreters on the scene of an arrest of a deaf individual. (Doc. 1, ¶¶ 36–40.) As Plaintiff does not allege any facts to suggest that a provision of the express policies violated her constitutional rights, the

---

that the officers had reason to believe that she committed a battery, in light of the witnesses, physical evidence, and Plaintiff's admission that she bit Behrans.

express custom-or-policy theory of discrimination—to the extent one is alleged (*see id.* ¶ 41)—is  due to be dismissed. Therefore, the only remaining claim that Plaintiff can make out is that the City inadequately trained or supervised its officers in carrying out those policies.[11]

"The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To establish deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Isolated incidents are often not enough to demonstrate deliberate indifference. *See id.* at 1351; *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990) (finding "no evidence of a history of widespread prior abuse . . . that would have put the [governing body] on notice of the need for improved training or supervision"); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407–08 (1997).

Other than stating in a conclusory fashion that the City was deliberately indifferent (Doc. 1, ¶ 71), Plaintiff has alleged no facts which plausibly suggest that the City was aware that its express policies with regard to interpreters were not being carried out and were causing constitutional violations. Even taking the allegations in the light most favorable to Plaintiff, she has submitted no prior similar incidents tending to

---

[11] Plaintiff alleges that "[t]he failure to obtain qualified interpreters was an . . . unwritten policy, custom and practice." (Doc. 1, ¶ 68.) The Court construes this theory as a failure to train and supervise officers to carry out the City's express written policies directing officers to obtain qualified interpreters. (*See id.* ¶ 36.)

suggest a pattern of misconduct or any other facts demonstrating that a need for training or supervision was plainly obvious. Therefore, the § 1983 claim as to the Fourteenth Amendment violations is due to be dismissed without prejudice.

If Plaintiff chooses to replead that claim, Plaintiff shall allege facts sufficient to demonstrate that the City was deliberately indifferent. Furthermore, Plaintiff shall more clearly articulate the claimed Fourteenth Amendment violation,[12] as the vast majority of Plaintiff's Complaint was devoted only to the false arrest and false imprisonment allegations.

### CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.  As to Count I (Rehabilitation Act) and Count II (ADA), Defendant City of Port Orange, Florida's Motion to Dismiss (Doc. 18) is **DENIED**. Those claims shall proceed.

2.  As to Count III (§ 1983 claim against the City), Defendant City of Port Orange, Florida's Motion to Dismiss (Doc. 18) is **GRANTED IN PART**. Plaintiff's theory of an express custom-or-policy of discrimination is **DISMISSED WITH PREJUDICE**. Plaintiff's theory of deliberate indifference to a need to train or supervise is **DISMISSED WITH PREJUDICE** as to the Fourth Amendment violations and **DISMISSED**

---

[12] For instance, if Plaintiff intends to make out an equal protection claim, she should plead facts demonstrating the existence of a law differentiating between disabled and non-disabled persons which is not rationally related to a legitimate state interest. *See, e.g.*, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–42 (1985); *see also Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) (noting that "the result of *Cleburne* is that States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational").

**WITHOUT PREJUDICE** as to the Fourteenth Amendment violations. If Plaintiff chooses to replead this claim, Plaintiff shall replead only the § 1983 claim against the City based on its failure to train or supervise giving rise to Fourteenth Amendment violations.

3.   As to Count IV (§ 1983 claim against the officers in their official capacities), Motion of Defendants, Phillip S. Slease and Kimberly A. Vingara, to Dismiss Plaintiff's Complaint, and Incorporated Memorandum of Law (Doc. 20) and Motion of Defendant, Brian A. Rizzo, to Dismiss Plaintiff's Complaint, and Incorporated Memorandum of Law (Doc. 32) are **GRANTED**. Count IV is **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to terminate Defendants Phillip S. Slease, Kimberly A. Vingara, and Brian A. Rizzo as parties in this case.

4.   Plaintiff has leave to file an amended complaint that complies with the strictures of this Order on or before Friday, March 1, 2013.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on February 16, 2013.


ROY B. DALTON JR.
United States District Judge


Copies:

Counsel of Record